**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE (Wilmington)**

| | | |
|---|---|---|
| **MONEYCAT LTD,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 1:13-1358** |
| | : | |
| **PAYPAL INC.,** | : | |
| | : | |
| **Defendant.** | : | |

**Goldberg, J.**                                                                              **May 15, 2014**

<u>**Memorandum Opinion**</u>

This is a patent infringement action instituted by Plaintiff, MoneyCat Ltd, against Defendant, PayPal, Inc. MoneyCat generally alleges that PayPal's electronic payment processing services and related products infringe three of MoneyCat's patents. Discovery is currently underway as directed by a Scheduling Order entered on November 25, 2013.

PayPal has moved to transfer this case to the Northern District of California, arguing that litigation there would be far more convenient given the scope of the allegations and the amount of evidence and witnesses that PayPal will be required to produce.  Although transfer of this case could further delay its resolution, I conclude that convenience and the interests of justice dictate that this case should proceed in the Northern District of California. I will therefore grant PayPal's motion.

**I.    Factual Background**

MoneyCat is an Israeli corporation without a business presence in the United States. (Def. Br. Ex. D, at 21.) It does, however, own three patents entitled "Electronic Currency,

Electronic Wallet Therefor and Electronic Payment Systems Employing Them." (Compl. ¶¶ 9-18.) The named inventor on these patents, Kfir Luzzatto, is a resident of Israel, as is his wife Esther, who provided input during the invention process and is a likely witness in this case. (Def. Br. Ex. D, at 10; Def. Br. Ex. F, at 2-3.) The thrust of this lawsuit is that the bulk of PayPal's electronic payment and credit systems infringe upon these three MoneyCat patents. (Compl. ¶¶ 26-65.) The Complaint was filed on July 30, 2013, in the District of Delaware.[1]

PayPal is incorporated in Delaware, but maintains its principal place of business in San Jose, California. (Compl. 3.) PayPal has "approximately 2700 permanent employees in California," makes the majority of its management and development decisions in or near its San Jose office, and maintains the bulk of its business records there. (Dwight Decl. ¶¶ 4, 6, 8.) The Northern District of California, where PayPal proposes to transfer this case, has a courthouse in San Jose. In contrast, PayPal has no offices or employees in Delaware, although its services are undoubtedly used by Delaware residents. (Dwight Decl. ¶ 10.) "Bill Me Later," one of the accused services, was acquired by PayPal in 2008, and is headquartered in Maryland. (Dwight Decl. ¶ 11.) Two other accused infringers, Braintree and Venmo, were acquired by PayPal even more recently, and have offices on both coasts. (Pl. Br. Ex. B-C.)

## II.    Legal Standards

This motion is governed by 28 U.S.C. § 1404(a), which provides that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The threshold inquiry is whether the proposed transferee district is one in which the case could have been brought originally. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). Here,

---

[1]  The case was reassigned to me on September 24, 2013. Although I sit in the Eastern District of Pennsylvania, the case is still considered to be pending in the District of Delaware.

there is no dispute that MoneyCat could have sued PayPal in the Northern District of California. PayPal does not argue that venue is improper in Delaware, only that the Northern District of California would be a far more convenient forum.

Once the threshold requirement of a proper transferee venue is met, the question is whether the factors identified in 28 U.S.C. § 1404(a) weigh "strongly" in favor of transfer. Id. at 25. In other words, the Plaintiff's choice of forum is presumed reasonable, and it is the movant's burden to show that a transfer is warranted. Id. Because interests like "convenience" and "justice" are not capable of quantification with anything approaching mathematical precision, the transfer analysis grants the district court significant discretion and is "at least to some extent, subjective." Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).

I am guided here by the Supreme Court's articulation of the statute's core purpose:

The idea behind section 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court.

Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960). The Court in Continental Grain affirmed an order transferring a case from New Orleans to Memphis, where a related case was pending, based in part on the district court's finding that "[t]he convenience of the great majority of witnesses in this case dictates that this case be tried in Memphis." Id. at 21.

To assist courts undertaking the transfer analysis, the United States Court of Appeals for the Third Circuit elaborated on the text of section 1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995). The court set out six "private interest" factors and six "public interest" factors that should guide the trial judge's discretion. The private interest factors are: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated

3

by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). Id. The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; (6) the familiarity of the trial judge with the applicable state law in diversity cases.[2] Id.

## III.   Discussion

### A.   Timeliness

Prior to examining the above factors, I will first consider MoneyCat's argument that PayPal's motion, filed February 3, 2014, is untimely. MoneyCat first notes that my Policies and Procedures encourage the parties to make motions for a transfer prior to the Rule 16 scheduling conference, which occurred in this case over two months prior to PayPal filing its motion to transfer.[3] Second, MoneyCat contends that transfer at this point—with the case having proceeded through substantial portions of discovery—would delay resolution of its infringement claims, particularly where PayPal has refused to agree to continue on the same discovery schedule should the case be transferred. Under the current Scheduling Order, filed on November 25, 2013, fact discovery is to be completed by September 1, 2014.

---

[2]  Because this is a patent infringement case and not a state-law diversity case, the final public interest factor is not applicable here. See In re Link A Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (noting that infringement claims "arise under the federal patent laws, for which there is uniformity nationwide, and which the Northern District of California is equally equipped to address" as compared to the District of Delaware).

[3] See, Policies and Procedures July 2013, http://www.paed.uscourts.gov/documents/procedures/gldpol.pdf, at 4.

PayPal counters that it could not have known the scope of this lawsuit (and hence the relevant witnesses, amount of documents, etc.), until December 20, 2013, when MoneyCat served its list of accused products and services, which "asserted infringement against a total of 19 PayPal services by name," in addition to the "Venmo/Braintree services." (Def. Br. 1; Def. Br. Ex. A, at 2-3.)   MoneyCat responds that the Complaint articulated enough of PayPal's services, such that PayPal should have been on notice of the scope of the lawsuit long before December 2013. (E.g., Compl. ¶ 27 ("PayPal has been directly infringing, and continues to directly infringe, one or more claims of the '602 patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling or importing into the United States electronic payment systems, products and services covered by the '602 patent, and practicing one or more methods claimed in the '602 patent.").)

Review of MoneyCat's Complaint reflects general allegations that PayPal's "electronic payment systems, products and services" infringe the three patents-in-suit, but does not name any specific PayPal services in the detail provided by the December 20th list. As PayPal argues, knowledge of the "specific functionalities" being challenged was potentially necessary to help it determine which witnesses it would need to make available and the evidence it would likely be expected to produce.

At the same time, the parties have a significant litigation history. MoneyCat first sued PayPal for infringement in 2010, before voluntarily dismissing the Complaint. And PayPal admitted in its Answer that it instigated several *ex parte* reexaminations of the patents-in-suit. (Ans. ¶¶ 32, 46, 60.) It thus seems likely that PayPal was aware of MoneyCat's position that the patents at issue cover substantial portions of PayPal's business.

As my procedures suggest, motions to transfer ought to be made as early in the proceedings as practicable. It is certainly preferable that "the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts." McDonnell Douglas Corp. v. Polin, 429 F.2d 30, 30 (3d Cir. 1970). However, this is not a hard-and-fast rule against transfers later in the proceedings. See, e.g., United States v. Swift & Co., 158 F. Supp. 551, 560 (D.D.C. 1958) (granting motion to transfer while summary judgment motion was pending). In any event, under the current schedule, fact discovery will not close until September 1, 2014, almost four months from now and seven months from when the motion was initially filed. Dispositive motions are not due until late December 2014. This case is in its early stages. Thus, while the transfer motion could have been filed earlier, it is not so late that transfer will substantially delay the litigation of this matter.[4]

**B.      Private Interest Factors**

The analysis of a motion to transfer calls for an "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). The Third Circuit's list of private interest factors in Jumara directs the court to those concerns that are unique to the parties.

**1.      Plaintiff's Forum Choice**

The plaintiff's forum choice is entitled to considerable—even "paramount"—deference. Shutte, 431 F.2d at 22. This initial deference exists because of the presumption that the plaintiff has chosen a convenient forum in which to litigate the case. Piper Aircraft, 454 U.S. at 255-56.

---

[4]  MoneyCat notes that PayPal has refused to "stipulate to the same pretrial schedule already set in this action." (See Pl. Opp. Ex. B.) It fears that this refusal is merely a prelude to efforts by PayPal to delay the resolution of this case, to the detriment of MoneyCat, the patent holder. I am not unsympathetic to MoneyCat's desire for speedy adjudication of its claims, and took that into account in setting an initial discovery schedule shorter than the one PayPal requested.

However, the deference given to the plaintiff's choice is reduced when the chosen venue is not the plaintiff's home forum. Link A Media, 662 F.3d at 1223. A number of courts have thus declined to give significant weight to the forum choice of a foreign-based corporation without any substantial ties to the chosen venue. See id. at 1222 (Bermudan company without any ties to Delaware, where case was filed); Mitel Networks Corp. v. Facebook, Inc., 943 F. Supp. 2d 463, 469-70 (D. Del. 2013) (corporations with principal places of business in Canada, not Delaware) Minstar, Inc. v. Laborde, 626 F. Supp. 142, 145-46 (D. Del. 1985) (corporations with principal place of business outside Delaware, where case was filed). The Third Circuit has concluded in the forum non conveniens context that, under these circumstances, a foreign plaintiff "may bolster the amount of deference due their choice by making a strong showing of convenience." Windt v. Qwest Commncs. Int'l Inc., 529 F.3d 183, 190 (3d Cir. 2008).

MoneyCat is an Israeli company that does no business in the United States. (Def. Br. Ex. D, at 21.) It has no apparent ties to Delaware, and thus its choice of Delaware as a venue is not entitled to significant deference unless it can make a strong showing that Delaware is more convenient than California. MoneyCat argues that Delaware is more convenient because the East Coast is the nearest forum to Israel that it could have chosen. See Tsoukanelis v. Country Pure Foods, Inc., 337 F. Supp. 2d 600, 604 (D. Del. 2004) ("Although the plaintiffs did not choose their 'home turf' as the forum, they chose the next closest possible forum."). However, as PayPal points out, MoneyCat will be required to travel a long distance (about 12 or 13 hours, Def. Reply, Ex. E) to Delaware, and the additional travel to California would only add another 5 hours or so. And there is reason to believe that MoneyCat will have to send resources to the West Coast on occasion no matter where this case is tried, because much of the evidence and many of the witnesses in this case are in California. See Minstar, 626 F. Supp. at 146 (according forum

choice less deference because plaintiffs would have "to travel to a foreign jurisdiction no matter where this action is tried"). On balance, whatever marginal additional inconvenience will be inflicted on MoneyCat by having to litigate in California is outweighed by transferring this case to the place where the bulk of the evidence exists. I therefore accord MoneyCat's choice of forum less deference than would otherwise be appropriate.

### 2.      Defendant's Forum Preference

PayPal would prefer to litigate in the Northern District of California because it is headquartered there, maintains the bulk of its records there, and has a number of potential employee-witnesses located there. These are legitimate reasons to favor an alternate forum, but because the reasons will generally be considered under other factors, I do not give them significant weight here, to avoid double-counting. This factor therefore weighs in favor of transfer, but only slightly.

### 3.      Where the Claim Arose

MoneyCat notes that PayPal's allegedly infringing services are offered and used throughout the United States, and thus its claims for infringement cannot be said to have arisen in any particular district. The cases it cites from this court support that position. See Smart Audio Techs., LLC v. Apple, Inc., 910 F. Supp. 2d 718, 730 (D. Del. 2012) (noting that where "the defendant in a patent infringement action operates on a national or global level," this factor is "typically neutral"); Cellectis S.A. v. Precision Biosciences, Inc., 858 F. Supp. 2d 376, 381 (D. Del. 2012) (noting that "a claim for patent infringement arises wherever someone has committed acts of infringement").

On the other hand, PayPal points to other Delaware district court cases observing that infringement actions also can be said to arise "where the allegedly infringing products were

designed and manufactured." <u>Wacoh Co. v. Kionix Inc.</u>, 845 F. Supp. 2d 597, 602 (D. Del. 2012); <u>see also</u> <u>Smart Audio</u>, 910 F. Supp. 2d at 730-31 (concluding that, because acts of infringement were committed throughout the country, but product development occurred in transferee district, the factor weighed slightly in favor of transfer).

Here, I agree with the court's view in <u>Smart Audio</u>. There is no dispute that users of PayPal's services exist across the United States, including in Delaware. However, PayPal has also alleged, without challenge from MoneyCat, that "most of the decisions regarding overall design, marketing, and development of the PayPal Services are made in or near San Jose, California." (Dwight Decl. ¶ 6.) This factor, then, weighs in favor of transfer.

### 4.    Convenience of the Parties

I have already considered to some extent the additional inconvenience to MoneyCat that might accrue from having to litigate in the Northern District of California rather than its preferred venue. MoneyCat also stresses that "[c]omparing the financial condition of MoneyCat and Paypal . . . weighs against transfer," the suggestion being that MoneyCat will be financially burdened by being required to litigate in California. But there is nothing in the record to suggest that this is true. In fact, MoneyCat's outside counsel has an office in San Diego, which will surely lessen the burden of having to litigate in California, and MoneyCat is currently bearing the expense of local counsel in Delaware, which would be avoided if the case is tried in California. Overall, there is no reason to think that litigating in California will be significantly more expensive for MoneyCat, especially since most of the witnesses and evidence exist in either California or Israel, and none exists in Delaware.[5]   However,  if  not  financially  burdensome,

---

[5]  PayPal does not suggest that it would be financially burdened by litigating on the East Coast, nor could it. As MoneyCat points out, PayPal already litigates extensively in Delaware, both as a plaintiff and a defendant, and reports $6.6 billion in revenue for 2013. <u>See</u> PayPal Press Center, https://www.paypal-media.com/about (last accessed May 14, 2014).

litigation in California would clearly be more convenient for PayPal. "In patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer." In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009) (quoting Neil Bros. Ltd v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). That is very likely to be true in this case as well, given that MoneyCat does not have a product or service of its own. (Def. Br. Ex. D, at 21.) Thus, PayPal will be required to produce the lion's share of documents, including its source code, and make available a number of its employees as witnesses. Most of these witnesses, and substantially all of these documents, are likely to exist in California. See id. ("Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred if the case were to proceed in the Northern District of California."). Although there is no doubt that advances in technology, and data storage technology in particular, have rendered transport less costly and burdensome, there is clearly a convenience advantage in allowing PayPal to litigate nearer its headquarters.

Under this factor it is also appropriate to consider MoneyCat's argument that PayPal's incorporation in Delaware weighs in favor of denying the transfer motion. It appears that most courts who give incorporation significant weight have done so by recognizing that a *plaintiff's* state of incorporation is part of its "home turf," a finding that bolsters the weight given to the plaintiff's choice of forum. See Linex Techs., Inc. v. Hewlett-Packard Co., 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013); Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd., 797 F. Supp. 2d 472, 479 (D. Del. 2011). However, courts have not been uniform on this point. See Pragmatus AV, LLC v. Yahoo! Inc., 2012 WL 4889438, at *5 n.6 (D. Del. Oct. 15, 2012) (noting the "divergence of opinion in our Court as to whether an entity's 'home turf' can include its place of incorporation"). On the other hand, some decisions appear to give the defendant's

state of incorporation far less significance than its principal place of business, while others suggest that a defendant that has chosen to incorporate in a state ought to be required to raise more persuasive reasons for not wanting to litigate there. <u>Compare</u> <u>Link A Media</u>, 662 F.3d at 1224 ("Neither § 1404 nor <u>Jumara</u> list a party's state of incorporation as a factor for a venue inquiry. It is certainly not a dispositive fact in the venue transfer analysis, as the district court in this case seemed to believe."), <u>with</u> <u>In re Altera Corp.</u>, 494 Fed. Appx. 52, 53 (Fed. Cir. 2012) ("To be sure, the respondents' status as Delaware corporations is not entitled to controlling weight insofar as no office or employees are located in Delaware. Still, the relevant inquiry is broad enough to include the Delaware court's interest in resolving disputes involving its corporate citizens, as opposed to selection of venue for less legitimate reasons."). I follow these decisions by considering PayPal's incorporation as weighing slightly in favor of denying transfer, but I decline to give it significant weight. Overall, because neither party has a significant physical connection to Delaware, I find the convenience of the parties factor to weigh in favor of transfer.

### 5.    Convenience of Witnesses and Availability for Trial

This factor considers the convenience of witnesses and the extent to which the transferor court has the ability to compel the attendance of uncooperative witnesses. Generally speaking, this factor plays a limited role in this case, because most of the witnesses are parties or employees of one of the parties. (<u>See</u>, <u>e.g.</u>, Def. Reply, Ex. D (PayPal Supplemental Initial Disclosures) (naming 15 persons with relevant information, 10 of which are PayPal employees).) A party is "obligated to procure the attendance of its own employees," regardless of where the trial is ultimately held. <u>Affymetrix</u>, 28 F. Supp. 2d at 203. (Thus, the location of employee-witnesses should generally be analyzed as affecting that convenience of the parties, not the

witnesses.) PayPal does point out, however, that one potential witness identified by MoneyCat is an employee of a company called Intellectual Ventures, which is apparently located within the subpoena power of the Northern District of California. Further, PayPal suggests that former employees (or persons who become former employees before this case is tried), whose attendance it could no longer procure, may have relevant information, and are likely to be located in California. This is a valid concern, but it does not appear that PayPal has identified any such persons at this stage. Accordingly, although this factor weighs slightly in favor of transfer, I give it little weight.

### 6.     Location of Books and Records

I have already discussed the fact that PayPal is likely to be the party producing the bulk of documents and records in this case, and that it would be more convenient for it to litigate this case near its headquarters than on the East Coast. Efficiency favors transferring a case to the location where the vast majority of relevant records are to be found. Genentech, 566 F.3d at 1345. Although MoneyCat notes that advances in technology have reduced the burden of moving physical documents from place to place, it would be "improper to ignore [this factor] entirely." Link A Media, 662 F.3d at 1224. This factor weighs in favor of transfer.

### C.     Public Interest Factors

In contrast to the private interest factors, the public interest factors concern matters "affecting the convenience of the forum," rather than the parties. Windt, 529 F.3d at 189.

### 1.     Enforceability of the Judgment

Neither party contends that a judgment in this district would be any harder or easier to enforce than a judgment in the Northern District of California. This factor is neutral.

### 2.     Practical Considerations

This factor directs the court to consider practical concerns related to a trial in both the transferee and transferor courts. I have already noted that the bulk of the witnesses in this matter will likely come from PayPal. It follows that a trial nearer to PayPal's headquarters is likely to present fewer complications than one across the country. Witnesses who live within a short distance of the courthouse are likely to be more flexible as to when they are able to attend trial and testify, making the management of the proofs simpler. And, as PayPal notes, the Protective Order in this case requires PayPal to maintain a stand-alone computer with its source code within 10 miles of the courthouse for the duration of trial. Although this is likely not a great expense, the transport across the county of the secure computer containing the source code would likely be simplified if trial were to take place in California. Finally, transferring this case would relieve both parties of the expense of local counsel. Affymetrix, 28 F. Supp. 2d at 205-06.

Against these factors, MoneyCat does no more than repeat its argument that it makes no sense to transfer this case when discovery is "well under way in a proper forum." There is no reason why the discovery process cannot continue pending the transfer and as noted previously under my scheduling order, discovery will not conclude until September 2014

### 3.     Administrative Difficulty Resulting From Court Congestion

As both parties agree, analysis of this factor reveals no relevant difference between this district and the Northern District of California. This factor is therefore neutral.

### 4.     Local Interest

PayPal argues that California has a greater local interest in this case than Delaware because PayPal's products and services were developed primarily in California, and because a patent infringement suit calls into question the "work and reputation of several individuals"

13

associated with PayPal who live and work in that district. In re Hoffman-La Roche, Inc., 587 F.3d 1333, 1336 (Fed. Cir. 2009). MoneyCat, meanwhile, notes that the patent laws implicate interests that are national, not local, and that several courts in this district have declined to give any weight to this factor in a patent infringement dispute. See Helicos Biosciences Corp. v. Illumina, Inc., 858 F. Supp. 2d 367, 375 (D. Del. 2012) (noting that "patent litigation does not constitute a local controversy in most cases"); Intellectual Ventures I LLC v. Altera Corp., 842 F. Supp. 2d 744, 760 (D. Del. 2012) (observing that "[i]n patent litigation, the local interest factor is typically neutral"); Acuity Brands, Inc. v. Cooper Indus., Inc., 2008 WL 2977464, at *3 (D. Del. July 31, 2008) (noting that "it is well settled that patent rights are not considered state or local matters and do not implicate local interests").

MoneyCat has the better of this argument. Although it is perhaps not inconceivable that one district could have a greater interest in a patent infringement controversy than another (say, in the context of truly regional businesses), that is clearly not the case here. PayPal is a national name with users all across the United States. A finding of infringement could potentially affect PayPal's operations everywhere, not just in California. I therefore conclude that California does not have any unique local interest in this case.

MoneyCat argues that this factor actually weighs against transfer because, in seeking transfer to the Northern District of California, "[w]hat PayPal alleges is 'local interest' is actually 'local bias.'" Although MoneyCat does not fully develop this argument, the idea seems to be that PayPal is likely to find a more favorable jury pool in a district where it employs a substantial number of people—approximately 2,700 in California, and the majority in the Northern District of California—and has significant ties to the community. (Dwight Decl. ¶ 4.) This argument is

somewhat speculative, but even if its premise were true, MoneyCat has not explained why voir dire will not be sufficient to protect it from jury bias. I consider this factor to be neutral.

### 5.    Public Policies of Each Forum

Neither party suggests that there are any local policies that favor one forum over the other in this case, and I therefore consider this factor to be neutral.

### D.    Balancing

Of the private interest factors, two weigh in favor of transfer (convenience of the parties, and the location of books and records), one weighs against transfer (MoneyCat's forum preference), and three weigh only slightly in favor of transfer (PayPal's forum preference, where the claim arose, and the convenience and availability of witnesses). Of the public interest factors that apply, one weighs in favor of transfer (practical considerations), and four are neutral. Balancing these factors, I conclude that PayPal has met its burden to justify transferring this action to the Northern District of California.

An appropriate order follows.