UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONEYCAT LTD,<br><br>            Plaintiff,<br><br>     v.<br><br>PAYPAL INC,<br><br>            Defendant. | Case No.  14-cv-02490-JST<br><br>**ORDER GRANTING MOTION TO STAY**<br><br>Re: ECF Nos. 134, 170 |

Before the Court is PayPal, Inc.'s renewed Motion to Stay Pending Covered Business Method Review. ECF No. 134. For the reasons set forth below, the Court will GRANT the motion.

## I.     BACKGROUND

This is a patent infringement action between MoneyCat, Ltd., a non-practicing entity, and PayPal, Inc., an e-commerce business that allows users to make payments and money transfers through the Internet. MoneyCat alleges infringement involving forty-two claims across three patents: U.S. Patent Nos. 7,590,602 ("'602 Patent"); 8,051,011 ("'011 Patent"); and 8,195,578 ("'578 Patent"). ECF Nos. 1 at 2-4; 134 at 3. The patents relate to electronic payment systems. ECF No. 1 at 2-4. The patents-in-suit were subject to Patent and Trademark Office proceedings prior to this litigation: the '602 Patent has been the subject of two *ex parte* reexamination proceedings, and the '011 and '578 Patents have each been the subject of one *ex parte* reexamination proceeding. ECF No. at 134 at 4 n.1.

MoneyCat originally filed its complaint in the District of Delaware on July 30, 2013. ECF Nos. 1, 134 at 3. On February 3, 2014, PayPal filed a motion to transfer this case here, to the Northern District of California. ECF No. 33. On February 20, 2014, MoneyCat served its initial

1  claim charts on PayPal, and on February 27, it served on PayPal a list of terms for claim
2  construction. ECF Nos. 44, 46. On March 14, 2014, PayPal petitioned the Patent Trial and
3  Appeals Board ("PTAB") to institute covered business method ("CBM") review with regard to all
4  claims of the patents-in-suit that are in dispute in this litigation. ECF No. 59 at 1. Four days
5  later, it filed its initial motion to stay before the Delaware court. ECF Nos. 58, 59.

6  On the same day PayPal filed its initial motion to stay, the parties filed a joint claim
7  construction chart. ECF No. 62. Then, on April 28, 2014, the parties filed opening claim
8  construction briefs. ECF Nos. 84-88.

9  The Delaware Court granted the motion to transfer on May 15, 2014. ECF No. 97. That
10 court did not decide whether to stay the case before it was transferred here. On July 15, 2014,
11 PayPal filed with this Court its Renewed Motion to Stay Pending Covered Business Method
12 Review. ECF No. 134.

13 On September 24, 2014, after briefing was complete but prior to the hearing on the motion,
14 the PTAB instituted review of all three patents-in-suit, and all but two dependent claims under
15 those patents. ECF Nos. 164, 165.

## II. LEGAL STANDARD

"Courts have [the] inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (internal citations omitted). A stay may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity, and if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." In re Cygnus Telecomms. Tech., LLC Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983)).

Under § 18(b)(1) of the Leahy-Smith America Invents Act, Pub. L. No. 112-39, § 18, 125 Stat. 284, 329-32 (2011), Congress codified four factors for courts to consider when determining whether to grant a motion to stay pending CBM review: (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and a trial date is set;

(3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and the court.  The U.S Court of Appeals for the Federal Circuit has noted that the first and fourth factors overlap somewhat but nonetheless are "separate, individual factors which must be weighed in the stay determination.  [Courts cannot] collapse the four-factor test expressly adopted by Congress into a three-factor test." VirtualAgility Inc. v. Saleforce.Com, Inc., 759 F.3d 1307, 1313 (Fed. Cir. 2014).

Congress enacted the AIA in order "'to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs' and 'to create a timely, cost-effective alternative to litigation.'" PersonalWeb Techs., LLC v. Facebook, Inc., Nos. 5:13-CV-01356-EJD, 5:13-CV-01358-EJD, 5:13-CV-01359-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) (citing U.S. Patent and Trademark Office, Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Review Patents, 77 Fed. Reg. 48680-01 (Aug. 12, 2012) (codified at 37 C.F.R. §§ 42.100 *et seq.*)).  Although the first three factors of the AIA test largely track the test federal courts have previously used to evaluate motions to stay pending earlier types of patent review, Congress apparently adopted the fourth factor to place a thumb on the scale in favor of granting stays.  Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P., 922 F. Supp. 2d 486, 496 & n.14 (D. Del. Feb. 5, 2013) (noting that "[i]t appears the intent of [the fourth factor] was to ensure that district courts would grant stays pending CBM review proceedings at a higher rate than they have allowed stays pending *ex parte* reexaminations.") (citations omitted); GT Nexus, Inc. v. Inttra, Inc., No. C 11-02145-SBA, 2014 WL 3373088, at *2 (N.D. Cal. July 9, 2014) (citing Market-Alerts, 922 F. Supp. 2d at 496 & n.14); Zillow, Inc. v. Trulia, Inc., No. C12-1549JLR, 2013 WL 5530573, at *3 (W.D. Wash. Oct. 7, 2013) (citing Market-Alerts, 922 F. Supp. 2d at 489).

**III.  DISCUSSION**

   **A.   Simplification and Streamlining**

The Court finds that granting a stay pending CBM review is likely to simplify and

streamline trial of the issues in this case.

Where, as here, the PTAB has instituted review of claims asserted in a patent-infringement action, courts generally find that review is likely to simplify the issues and streamline trial of the action. See Virtualagility, 759 F.3d at 1314 ("We find it significant that the PTAB granted CBM review on *all* asserted claims of the *sole* asserted patent. . . . In this case, the PTAB expressly determined that *all* of the claims are more likely than not unpatentable. This CBM review could dispose of the entire litigation: the ultimate simplification of issues.") (citations omitted); Versata Software, Inc. v. Dorado Software, Inc., No. 2:13-cv-00920-MCE-DAD, 2014 WL 1330652, at *2 (E.D. Cal. Mar. 27, 2014) (finding that even if all claims were not resolved by CBM review, cancellation of any claim "could significantly alter this action by clarifying and narrowing the claims and defenses available to Plaintiffs and Defendant."); Intertainer, Inc. v. Hulu, LLC, No. CV 13-054990CJC (RNBx), 2014 WL 466034, at *1 (C.D. Cal. Jan. 24, 2014) (same). This is because where the PTAB has granted review, it "has already determined it is 'more likely than not' that a number of the claims [at issue] are unpatentable." Versata, 2014 WL 1330652, at *2. Where CBM review has the potential to dispose of all issues in the litigation, "the simplification factor weighs heavily in favor of [a] stay." Virtualagility, 759 F.3d at 1314. And to the extent that any claims remain to be resolved after review, "the PTAB's decision will likely provide further guidance for the parties and this Court." Id.

Here, PayPal sought review of all forty-two claims MoneyCat has indicated it seeks to assert in this action. The PTAB instituted review of all but two of those claims, and the two remaining claims depend on claims that *are* subject to review. Thus, very nearly every claim will be reviewed for patentability—and even those that are not subject to review may be simplified by review of the claims on which they depend. Covered business method review is likely to simplify and streamline the issues in this case.

MoneyCat makes several arguments that review will not simplify and streamline the resolution of this case. None are persuasive.

First, several of MoneyCat's arguments hinge on the premise that the Court cannot determine whether review will simplify and streamline the issues presented in this litigation

4

because the PTAB has not yet instituted review. ECF No. 144 at 11-12. That was true at the time MoneyCat filed its opposition, but it is not true anymore. The fact that the PTAB has instituted review disposes of most of MoneyCat's arguments related to this factor.

Second, many of MoneyCat's remaining arguments invite the Court to reevaluate the PTAB's assessment that it is more likely than not that Moneycat's claims will be invalidated upon review. See, e.g., ECF No. 144 at 12-13. The Court will decline that invitation, which asks the Court to exceed its proper role. "Under the statutory scheme, district courts have no role in reviewing the PTAB's determinations regarding the patentability of claims that are subject to CBM proceedings." VirtualAgility, 759 F.3d at 1313.

Third, MoneyCat asserts there will be no simplification of issues here because CBM review proceedings are unlikely to resolve every invalidity contention that might arise with respect to the patents-in-suit. ECF No. 144 at 13-14. But the question is not whether review will entirely eliminate this litigation, or on what basis the PTAB will find the patentee's claims invalid, if it does. Rather, the question is whether "the PTAB's decision will likely provide further guidance for the parties and this Court" by simplifying the issues and streamlining the trial of the case. Versata Software, 2014 WL 1330652, at *2; Zillow, 2014 WL 5530573, at *4.

The Court finds that the review proceedings are likely to simplify and streamline this litigation, at least in part, given that the PTAB has found that it is more likely than not that the patent claims before this Court will be invalidated. If and when claims are cancelled or amended—on any basis—upon review, "there will . . . be [at least] some amount of simplification for the court and the parties." Zillow, 2014 WL 5530573, at *4; cf. Fresenius USA, Inc. v. Baxter Int'l, Inc., 721 F.3d 1330, 1340 (Fed. Cir. 2013) (explaining that, upon reexamination by the Patent and Trademark Office, "if [a] claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails.").

Fourth and finally, MoneyCat argues that PayPal's petitions for CBM review represent its seventh, eight, and ninth attempts to invalidate the patents-in-suit, and thus the Court should assume that review will not result in a simplification of this litigation; if the patents have not been invalidated as a result of any of the previous attempts, it is unlikely to occur now. ECF No. 144 at

5

11-12. But this argument fails for two reasons. The first is that PayPal's prior attempts were *ex parte* reexaminations, which are markedly different in both process and outcome than CBM review proceedings. See GT Nexus, 2014 WL 3373088, at *5 (rejecting the argument that the fact that the patents had undergone *ex parte* reexamination militated against granting a stay because *ex parte* reexamination procedures and CBM review procedures are significantly different). 75 to 80 percent of CBM reviews lead to the cancellation of all claims, compared to only 11 percent of *ex parte* reviews. Klodowski & Stroud, "Claim and Case Disposition," America Invents Act Blog, www.aiablog.com/claim-and-case-disposition (accessed Nov. 4, 2014); ECF No. 134 at 5; ECF No. 135-9 (USPTO Ex-Parte Reexamination Filing Data).[1] Thus, the fact that these claims and patents have been subject to *ex parte* reexamination does not indicate that CBM review is unlikely to simplify and streamline the issues in this case. The second reason is that the success (or lack thereof) of PayPal's past attempts to invalidate MoneyCat's patents was not considered by the PTAB, which has found that CBM review is likely to result in the invalidation of at least some claims.

This factor weighs in favor of granting a stay.

**B.      Stage of Discovery and Trial Date**

Under Virtualagility, this factor is evaluated at the time the motion to stay is filed, not at the time a court rules on the motion. 759 F.3d at 1317 ("Generally, the time of the motion is the relevant time to measure the stage of the litigation."). PayPal originally filed the motion to stay in March 2014, just after filing petitions for review. At that point in the litigation, the complaint and answer had been filed, six months were left until the deadline for fact discovery, nine months remained before expert discovery was to close and summary judgment motions were to be filed, and the parties had not yet filed claim construction briefs. ECF Nos. 1, 9, 23. No trial date had been set at that time. Thus, the Court finds that the case was in its early stages when PayPal filed the initial motion to stay. See Virtualagility at 1315-16 (holding that "the timing factor heavily favors a stay" where "the parties had not yet filed their joint claim construction statement, the

---

[1] In a significant percentage of ex parte reviews, however, some claims were changed. See ECF No. 135-9.

deadline to complete fact discovery was more than six months away, and jury selection was not until [a year and a half after the motion to stay was filed].").

Even if the Court evaluated the stage of the litigation at the point that PayPal filed its renewed motion to stay, it would find that this factor weighs in favor of granting a stay. Although more progress had been made in the case, many significant steps remained: fact discovery was ongoing, with interrogatories having been propounded and documents having been produced, but no fact depositions having been taken; expert discovery on infringement, validity, and damages had not begun; and no claim construction hearing had been held. ECF Nos. 134 at 11; 168. The parties filed opening claim construction briefs while the case was pending before the Delaware District Court, ECF Nos. 84-88, but they may yet file supplemental infringement contentions, ECF No. 168. A claim tutorial is scheduled for January 26, 2015 and a claim construction hearing is set on February 9, 2015. Id. Fact discovery will close sixty days after the Court issues its claim construction order. The Court has not scheduled a trial date.

This factor weighs in favor of granting a stay.

### C. Prejudice and Tactical Advantage

MoneyCat claims that PayPal has engaged in dilatory conduct to achieve a tactical advantage in this litigation, thereby unduly prejudicing MoneyCat. ECF No. 144 at 1-2, 18-21.

As a preliminary matter, the Court notes that, because MoneyCat and PayPal are not direct competitors, any prejudice MoneyCat experiences as a result of delay can be compensated by monetary damages. Evolutionary Intelligence, LLC v. Facebook, Inc, Nos. C 13-4202 SI, C 13-4204 SI, 2014 WL 261837, at *3 (N.D. Cal. Jan. 23, 2014) ("[C]ourts have consistently found that a patent licensor cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement.") (citation omitted).

More specifically, the Court does not find that PayPal engaged in improper dilatory conduct in this case. See TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp., No. 13-cv-2218-JST, 2913 WL 6021324, at *4 (N.D. Cal. Nov. 13, 2013) ("Provided an accused infringer is diligent, delay due to preparing [a petition for review], ascertaining the plaintiff's theories of infringement, or otherwise researching the patents that have been asserted in an action does not

7

unduly prejudice the patent owner."); Asetek Holdings, Inc. v. Cooler Master Co., No. 13-cv-00457-JST, 2014 WL 1350813, at *5 (N.D. Cal. Apr. 3, 2014) (same).  PayPal filed its review petitions less than a month after MoneyCat identified the claims it would assert in this litigation, and it filed the initial motion to stay four days after filing the review petitions.  MoneyCat makes much of the fact that the patents-in-suit were subject to reexamination proceedings and suit by MoneyCat before this case commenced.  See ECF No. 144 at 19-20.  But MoneyCat has not shown that pre-litigation delay is something this Court should consider when resolving a motion to stay.

MoneyCat makes some additional arguments.  First, it alleges that the time it takes to resolve this litigation and review proceedings will exhaust the terms of MoneyCat's patents.  ECF No. 144 at 18.  But even if this is true, MoneyCat can be recompensed for the period of loss by monetary damages.  MoneyCat also argues that it will lose evidence as a result of the passage of time, but fails to identify any particular witness or piece of evidence that will become unavailable.  "Delay alone, without specific examples of prejudice resulting therefrom, is insufficient to establish *undue* prejudice."  Software Rights Archive, LLC v. Facebook, Inc., No. C-12-3970 RMW, 2013 WL 5225522, at *5 (N.D. Cal. Sept. 17, 2013) (emphasis in original); see also Evolutionary Intelligence v. Millennial Media, No. 5:13-cv-04206-EJD, 2014 WL 2738501, *6 (N.D. Cal. June 11, 2014) (speculation regarding the loss of evidence is insufficient to show prejudice).

Finally, each party alleges that the other engaged in tactical moves that have affected this litigation.  See, e.g., ECF No. 144 at 1; ECF No. 148 at 1, 2-3.  The record provides some support for the parties' arguments on this point.  But the Court is not convinced that any of PayPal's tactical filing choices resulted in measurable prejudice to MoneyCat.  See Asetek, 2014 WL 1350813, at *5 (finding that without more evidence than the declaration of the Plaintiff's CEO tending to show that the plaintiff would suffer prejudice as a result of a stay, "a stay could produce undue prejudice, although the degree of prejudice is hard to estimate on this record.").

1    This factor favors a stay.[2]

2    **D.    Reducing the Burden of Litigation on the Parties and the Court**

As discussed above, this factor overlaps somewhat with the first factor, and its purpose in part is to encourage district courts from granting motions for stay. Generally, where the PTAB has instituted review of many or all of the claims in the litigation, a stay relieves the parties of the burden of litigating common issues in two fora, and relieves the Court "of its obligation to construe the claims and resolve any other issues that may arise during the course of litigation." Xilidev, Inc. v. Boku, Inc., No. 13CV2793 DMS NLS, 2014 WL 3353256, at *3 (S.D. Cal. July 1, 2014).

MoneyCat argues that the prior *ex parte* reexamination proceedings that these patents have undergone indicate that CBM review will not reduce the burden of litigation here. But since the PTAB has already determined that it is more likely than not that CBM review will result in invalidation of at least some of the claims of the patents, the results of earlier *ex parte* proceedings are not instructive. Rather, it seems more likely than not that the effect of CBM review will be to reduce the work of the parties and the Court once the matter returns to this Court, if a stay is granted.

This factor weighs in favor of granting a stay.

**IV.   CONCLUSION**

For the foregoing reasons, PayPal's motion to stay is GRANTED.[3] The parties shall file a

---

[2] On October 7, 2014, two days before the hearing on this motion, MoneyCat filed a Motion to File Supplementary Material in Opposition to Defendant PayPal, Inc.'s Renewed Motion to Stay. ECF No. 170. MoneyCat's supplemental brief relates to eBay, Inc.'s recently-announced decision to spin off its PayPal business unit. MoneyCat argues that the spin-off will result in employee departures and other consequences that will make it harder for MoneyCat to gather discovery in support of its claims. The brief should have been filed further in advance of the hearing, but the Court will nonetheless permit its filing. Accordingly, ECF No. 170 is GRANTED.

The arguments contained in the brief are speculative, however; MoneyCat provides no basis for its predictions about what will happen at the newly spun-off PayPal. As a result, the supplemental brief does not materially advance MoneyCat's prejudice argument.

[3] MoneyCat asks the Court to attach conditions to any stay it grants, essentially limiting PayPal's ability to make future contentions before this Court and/or the Patent and Trademark Office. ECF No. 144 at 22. MoneyCat asserts that "This Court has recognized that attaching conditions to a stay are appropriate," citing the Court's prior order in TPK Touch Solutions, 2013 WL 5289015. What the Court actually said in TPK Touch was that "*[s]ome courts* have conditioned a stay

joint status report within seven days of the PTAB issuing its final decisions on all of the CBM petitions, informing the Court of those decisions. The same report shall also request the setting of a status conference and shall propose a schedule for the remainder of the case.  In addition, every 90 days the parties shall file a joint status report advising as to the status of the CBM review proceedings.[4]

**IT IS SO ORDERED.**

Dated:  November 4, 2014

                                              JON S. TIGAR
                                        United States District Judge

---

pending *ex parte* reexamination on the accused infringer's agreement to be bound by the PTO's findings to eliminate the risk of unnecessary duplication," but this Court did not itself reach the question of whether the imposition of such conditions was appropriate. Id. (emphasis added) (citations omitted).

Leaving aside the degree to which TPK Touch actually supports MoneyCat's request, the Court does not find that the conditions MoneyCat requests are necessary or fair, and declines to order them.

[4] The Court previously set certain dates at the case management conference conducted on October 1, 2014, see ECF No. 168, although it had not yet issued a scheduling order.  Those dates are now vacated.

10